```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF KENTUCKY
                  SOUTHERN DIVISION at LONDON


BRENDA LEE BOND,                  )
                                  )
     Plaintiff,                   )         Case No.
                                  )      6:20-CV-97-JMH
v.                                )
                                  )       MEMORANDUM
                                  )    OPINION and ORDER
KILOLO KIJAKAZI,                  )
ACTING COMMISSIONER OF SOCIAL     )
SECURITY,                         )
                                  )
     Defendant.                   )

                            ***
```

Plaintiff Brenda Lee Bond seeks judicial review of the Commissioner's final decision denying her applications for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act (Act). Fully briefed (DE 13 & 15), the matter is ripe for review.

Ms. Bond applied for DIB and SSI in July 2017. (*See* Tr. 15, 162, 167). The ALJ's decision denying her applications became the Commissioner's final decision when the agency's Appeals Council denied her request for review (Tr. 1-4, 15-24). *See* 20 C.F.R. § 404.981. The Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

Ms. Bond was 55 years old in March 2016, when she alleged that she became disabled due to low back pain (Tr. 23, 195, 198). The earliest medical evidence in the record came seven months

Page **1** of **8**

later, in October 2016, when she complained of low back pain that had begun three days prior (Tr. 257, 263). A magnetic resonance imaging (MRI) study showed mild-to-moderate degenerative changes. (*See* Tr. 287-88). There is no additional evidence that Ms. Bond sought any medical treatment between October 2016 and November 2017, when she reported pain in her low back and right hip. (Tr. 361). At that time, providers observed decreased range of motion with muscle spasms but normal motor power, sensation, and reflexes. (Tr. 362).

In December 2017, state agency medical consultant Dr. Allen Dawson reviewed the record to evaluate Ms. Bond's abilities. (Tr. 68-69). He concluded that there was insufficient evidence in the record — at that time — to make a finding as to her limitations. (Tr. 69). The next month, neurosurgeon Dr. William Brooks observed a marked reduction in Ms. Bond's lower back range of motion; however, he noted that her straight leg raise was normal and that she displayed no weakness, sensory loss, or reflex asymmetry, and had a normal gait. (Tr. 370). A study would later reveal some compression on a nerve root, for which Ms. Bond would have scheduled back surgery for the following April. (*See* Tr. 389-90, 371). After surgery, extreme pain was reported, but Ms. Bond was still able to walk around the examination room unassisted and displayed normal reflexes, muscle tone, and coordination. (Tr. 373-74).

That July, a physician assistant at Dr. Brooks' practice, Debbie Croucher, observed an indicium of increased pain with movement but no gait weakness. (Tr. 376). An x-ray showed "mild multilevel degenerative changes" (Tr. 389-90). Ms. Croucher wrote that Ms. Bond was "unable to work at her usual job due to ongoing back and leg pain after surgical intervention" and was "preclude[d] . . . from prolonged sitting, standing and walking" (Tr. 396).

Ms. Bond next saw Dr. Brooks in August 2018 after she fell and injured her right knee (Tr. 379). An MRI showed no internal derangement in the knee, but Dr. Brooks nevertheless concluded that she would benefit from a second back surgery (Tr. 392-93, 382). In October, after surgery, Ms. Bond was doing "reasonably well" (Tr. 383). Dr. Brooks observed a normal straight leg raise and improved strength (Tr. 386). He wrote that Ms. Bond was "unable to work at th[at] point in time" and "m[ight] well be permanent[ly] disabled from driving trucks, etc." (Tr. 386).

The next month, Ms. Bond went to a hospital for shortness of breath and wheezing (Tr. 297). A chest x-ray showed evidence of pneumonia, for which providers thought could be remedied with medication and home care. (Tr. 305, 320). Several days later, however, Ms. Bond returned to the hospital with worsening pneumonia and resultant respiratory failure (Tr. 307, 317, 322). She displayed a nontender back, normal range of motion, and normal strength. (Tr. 326, 349, 352, 355).

The ALJ followed the Commissioner's five-step sequential evaluation process for disability claims (Tr. 17-24). *See* 20 C.F.R. § 404.1520(a)(4) (outlining the process). As relevant here, the ALJ found between steps three and four that Ms. Bond had the RFC to perform a range of medium work (Tr. 19). *See id*. §§ 404.1545(a)(1) ("Your [RFC] is the most you can still do despite your limitations."), 404.1567(c) (defining medium work). At step four, the ALJ found that this RFC would allow her to do her past relevant work (Tr. 22-23). The ALJ alternatively found at step five that, even if she could not do her past relevant work, she could do other work existing in significant numbers in the national economy (Tr. 23-24). The ALJ thus concluded that Ms. Bond was not disabled (Tr. 22-24).

"On judicial review, an ALJ's factual findings [are] 'conclusive' if supported by 'substantial evidence.' *See Biestek v. Berryhill,* 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)). The substantial evidence threshold "is not high," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1154, 1157. The substantial evidence standard is even less demanding than the "clearly erroneous" standard that governs appellate review of district court fact-finding—itself a deferential standard. *Dickinson v. Zurko*, 527 U.S. 150, 152-53 (1999). Substantial evidence is the type of evidence that would suffice, at trial, to avoid a directed verdict. *See NLRB v.*

*Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939). It is "more than a mere scintilla" and "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (internal quotation omitted). A court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). Even if the Court were to resolve the factual issues differently, the ALJ's decision must stand if supported by substantial evidence. *See Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990).

Dr. Brooks opined that Ms. Bond was "unable to work" and might "well be permanent[ly] disabled from driving trucks, etc."; and Ms. Croucher opined that she was "unable to work at her usual job" (Tr. 386, 396). The ALJ was not required to "provide any analysis about how [she] considered such evidence in [her] . . . decision." *Id.*, § 404.1520b(c). The ALJ found that this evidence was "inherently neither valuable nor persuasive" (Tr. 21). Part of Ms. Croucher's statement did qualify as a medical opinion, however; she wrote that Ms. Bond was precluded from prolonged sitting, standing, and walking. (Tr. 396).

The ALJ agreed that Ms. Croucher's opinion was supported by her explanation, which would tend to make an opinion more persuasive. (Tr. 21). 20 C.F.R. § 404.1520c(c)(1). "However," the

Page **5** of **8**

ALJ continued, "it is inconsistent with recent treatment notes" showing significant improvement after surgery, including normal physical examinations and independent daily functioning (as discussed in detail above in relation to Ms. Bond's reported symptoms). (Tr. 21). *Id.*, § 404.1520c(c)(2). The ALJ therefore found that this opinion was not persuasive (Tr. 21).

The ALJ found that Dr. Dawson's prior administrative medical finding that there was insufficient evidence to evaluate Ms. Bond's claims at the time the doctor reviewed the evidence was persuasive (Tr. 21, 68-69). *See* 20 C.F.R. § 404.1513a(b)(1). The ALJ recognized, however, that "[m]ost of the treatment notes in the record are from 2018, which is after Dr. Dawson's review" (Tr. 21). Nevertheless, the ALJ found Dr. Dawson's opinion to be "persuasive". (Tr. 21). The ALJ then assessed Ms. Bond's RFC based on her "activities of daily living, the, medical record, and other evidence of record" (Tr. 21). The ALJ found that Ms. Bond had the RFC to do a range of medium work. (Tr. 19). In reaching this conclusion, the ALJ considered Ms. Bond's reported symptoms, the opinion evidence, prior administrative medical findings, and the rest of the record. (*See* Tr. 19-22).

The Court recognizes that its role in reviewing a final decision of the Commissioner is limited. That said, the Court agrees with the Plaintiff that the record contains nothing to support the ALJ's finding that the Plaintiff possessed the residual

functional capacity to perform medium work. This finding flies in the face of the uncontroverted opinion from the neurosurgeon who performed a spinal fusion on the Plaintiff. In fact, the neurosurgeon opined that Plaintiff was "unable to work" and might "well be permanent[ly] disabled from driving trucks, etc." Moreover, it was error for the ALJ to find Dr. Dawson's report to be "persuasive" when the physician himself stated that there was insufficient evidence to evaluate Ms. Bond's claims at the time the doctor reviewed the record. This was particularly egregious when Dr. Dawson did not have the reports of Dr. Brooks and Physician's Assistant Croucher's in front of him.

Accordingly,

**IT IS ORDERED herein as follows:**

(1) That the above-styled action be, and the same hereby is, **REMANDED** to the Commissioner for further proceedings consistent herewith.

(2) Defendant's motion for summary judgment (DE 15) is **DENIED** without prejudice.

(3) Plaintiff's motion for summary judgment is **GRANTED** (DE 13) insofar as the matter is remanded for further proceedings.

This the 11th day of August, 2021.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge